### RAILWAY COMPANY *v.* LAWTON.

Decided February 6, 1892.

1. *Railway—Duty to escort of passenger.*

    A person who enters a railway coach to assist a woman to a seat cannot recover damages for injuries sustained in leaving the train by reason of the failure of the trainmen to hold the train a reasonable time for him to get off, unless they had notice of his intention to do so.

2. *Right of escort to enter coach.*

    If the railway employees offer to assist a woman to a seat, her escort has no right to enter the coach for that purpose, and the railway company owe him no duty, except to refrain from wilful or wanton injury.

3. *Railway regulation—Notice to trespassers.*

    A notice that all persons not having business with the railway company were positively forbidden to enter any of its cars does not apply to a person who attends a passenger to render needed assistance.

APPEAL from *Pope* Circuit Court.

JORDAN E. CRAVENS, Judge.

Action by L. P. Lawton against the Little Rock & Fort Smith Railway Company, a leased line of the Missouri Pacific Railway Company. The case is sufficiently stated in the opinion.

*Dodge & Johnson* for appellant.

1. Plaintiff was not a passenger, and the defendant owed him no other duty than that of ordinary care, after having knowledge that he came aboard to assist a passenger with the intention of getting off at the same station. 72 Mass., 70;

59 Mo., 34. Knowledge on the part of the officer in charge of the train that plaintiff was on the train for the purpose of assisting a passenger is absolutely necessary to place defendant under any duty to such a person. 66 N. Y., 246 ;. 59 Md., 187 ; 10 S. E. Rep., 499; 84 Ga., 1. When strangers resort to the cars for their own convenience, or for business in no way connected with the carrier, they are without legal right, and can only hold the carrier responsible for wanton or wilful injury. Thomps., Car. Pass., pp. 104–5 ; 71 Ill., 500; 59 Pa. St., 129; 36 Ark., 50; *ib.*, 376; 41 *id.*, 549 ;. 46 *id.*, 535; 101 Pa. St., 258; 29 Ohio St., 367.

Under the rule in the above cases, the company owed. plaintiff no duty other than the negative one not to injure him wilfully or intentionally.

2. Plaintiff was guilty of contributory negligence, by his. own confession. Defendant was free from any negligence whatever, by reason of having exercised reasonable and ordinary care, even without knowing that plaintiff did not intend to become a passenger. 51 Ark., 477 ; 45 Ark., 26.

3. Persons frequenting station houses and cars of a carrier are required to obey all reasonable rules and regulations established by the carrier for their own protection and safety, and a failure to do so is contributory negligence. The carrier has a right to keep all persons off its cars who are not there for the purpose of taking passage or transacting business with the company. It was at least plaintiff's duty to notify the employees in order that they might take proper steps to avoid injuring him. 31 Ark., 31 ; 8 S. E. Rep., 529; 9 A. & E., 302.

4. Instruction No. 1 was misleading, in that it assumes that the conductor knew that plaintiff boarded the train to assist a passenger, and so knowing gave permission to enter the car. Custom cannot abrogate a regulation of the company, and instruction No. 2 was erroneous. 6 Ind., 533 ; 47 Mich., 569; 11 N. W., 153; 54 Wis., 234; 104 Ind., 13 ; 3 N. E. Rep., 611 ; 20 N. E. Rep., 776. It also assumed that the train failed to stop the usual and necessary length of

time to allow passengers to get on and off. Instruction 3 gave plaintiff all the rights of a passenger and was erroneous. There was no evidence to support the fourth.

5. Testimony as to the custom at Altus and other points as to hotel men assisting passengers on and off the train was incompetent. 49 Ark., 359; 45 Ark., 26.

*A. S. McKennon* for appellee.

1. It is not error to refuse instructions, if the court correctly gives the law upon all points arising in the case. 28 Ark., 8; 24 *id.*, 264; 34 *id.*, 649.

2. The instructions asked by defendant were properly refused; citing 36 Ark., 117; 31 *id.*, 666; 45 *id.*, 251; 49 *id.*, 263; *ib.*, 189. Appellee was not a trespasser. If Mrs. Sadler needed assistance to board the train, and appellant's servants failed to render it, then it was appellee's duty and right to do so. 13 Am. & E. R. Cases, 29. On account of custom he was not a trespasser. 40 Ark., 321; 46 *id*, 189.

HEMINGWAY, J. This was an action to recover damages for personal injuries sustained by the plaintiff while leaving the defendant's car, into which he had gone to escort a woman and child and assist them with their hand-baggage to a seat.

The matters charged in the complaint to cast liability upon the defendant are as follows: First, that the defendant did not stop its train the usual length of time or a reasonable time for persons to get on and off, and by reason thereof the plaintiff fell from the step and was injured while attempting to leave the car; and, second, that while he was engaged in leaving the car the train started with a sudden jerk and defendant's porter gave him "a violent thrust" with his elbow, by reason whereof he was violently thrown to the platform of the depot and badly hurt.

The questions arising upon the latter ground had better be disposed of at the outset, for as to them we find little difficulty in reaching a conclusion. According to the evidence, including that of the plaintiff himself, the sudden jerk, if

there were any, occurred while he was in the car, and caused him no injury; it certainly had no connection with the hurt he received in being subsequently thrown from the steps of the car. The porter's thrust was given as he stepped upon the car to resume his trip, and it is not alleged in the complaint nor shown by the evidence that it was due to his careless or wilful neglect. It appears that he acted as porters usually do in getting upon a train that is starting upon its course; and, as it was his duty to get aboard, and there is no evidence that he did it in an improper manner, it discloses no negligence. The instructions which based a right of recovery upon this ground were improper, and should not have been given.

A more difficult question arises upon the other ground of alleged negligence—one not settled by any decision of this court. The defendant insists that, inasmuch as the plaintiff did not enter the car to take passage upon it, but only as escort to a passenger, the defendant owed him no duty except not to injure him wilfully or wantonly ; while the plaintiff contends that, as he went upon the car with the knowledge of the trainmen and for the purpose of rendering necessary assistance to a female passenger and little child, the defendant owed him the same duties as a passenger. The learned counsel who has presented the cause for the plaintiff cites us to no authority in support of his contention, and it impresses us as unsound; the cases relied upon by the defendant do not, as we think, bear out his position, but show that it is untenable. *Lucas* v. *New Bedford R. Co.*, 6 Gray, 64; *Doss* v. *Mo., etc., R. Co.*, 59 Mo., 34; *Coleman* v. *Ga. R. Co.*, 84 Ga., 1. We have concluded that neither view is correct, but that reason commends as proper a rule between the two.

In the case of the *Louisville & Nashville R. Co.* v. *Crunk*, 21 N. E. Rep., 31, the Supreme Court of Indiana held that a railroad company owed the same duty to those assisting a passenger upon a train as to the passenger himself; but it cites no precedent for the ruling, and it is opposed to

*1. Duty of railway to one who escorts a passenger.*

all cases adjudged upon the subject to which our attention has been called. The law exacts from railroads for the protection of passengers the highest degree of care, and imposes a liability for all injuries which sound judgment, skill and the most vigilant oversight could have prevented; but this responsibility grows out of the relation or contract of carrier and passenger on account of the great perils of the undertaking. As this is the cause and origin of the rule, it would seem that the rule should be restricted in its application to persons who come within that relation, and such is the effect of the authorities. *Lucas* v. *New Bedford R. Co.,* 6 Gray, *supra; Doss* v. *Mo., etc., R. Co.,* 59 Mo., *supra; Coleman.* v. *Ga. R. Co.,* 84 Ga., *supra; Griswold* v. *Chicago, etc., R. Co.,* 26 N. W., 101; Thompson on Car. Pas., p. 49, sec. 7.

But a denial that the extreme responsibility contended for exists is not an affirmance of the rule that responsibility is restricted to wrongs that are wilful or wanton. Such conclusion would rest upon the premise that one attending a passenger enters the car from curiosity or upon his own business under a mere license from the company, and not upon business connected with the company upon an implied invitation. If this premise be false and the converse correct, then, according to the decisions of this and other courts, the carrier would be bound to the exercise of ordinary care (*St. L., I. M. & S. Ry.* v. *Fairbairn,* 48 Ark., 491; *Holmes* v. *N. E. R. Co.,* L. R., 4 Exch., 254); and that it is so bound in cases like this is held in the cases first cited, as well as in others upon the subject. *Gillis* v. *Penn. R. Co.,* 8 Am. L. Reg. (N. S.), p. 729; S. C. 59 Penn. St., 129; *Griswold* v. *Chicago, etc. R. Co.,* 26 N. W., *supra.** In our opinion the rule is correct upon principle. For it is a matter of common knowledge that, in the usual conduct of the passenger business, it often becomes necessary for

---

*Compare *McKone* v. *Mich. Cent. R. Co.,* 51 Mich., 601; *Cent. R. & B. Co.,* v. *Letcher,* 69 Ala., 106; *Keokuk Packet Co.* v. *Henry,* 50 Ill., 269.—[Rep.]

those not passengers to go upon the cars to assist incoming as well as outgoing passengers, and that a practice has grown up in response to this necessity. While it perhaps arose out of a consideration for the security and convenience of the traveler, it has proven beneficial to carriers, and now prevails in this State and extensively elsewhere, and is treated as an incident to the business in the conduct of the public and the acquiescence of carriers. It cannot be doubted that it has increased travel and the earnings of carriers, while it has promoted the convenience and security of passengers ; and if it should be abrogated, many persons would be compelled to forego journeys, to the detriment of the carrier and their own inconvenience. We conclude that such attendant performs a service in the common interest of carrier and passenger, and that his entry upon a car is upon an implied invitation which entitles him to demand ordinary care of the carrier.

But although we think the attendant is entitled to demand ordinary care for his protection, and would be entitled to recover for an injury caused by its omission, still he could not recover unless he established that his injury was caused by some negligent act or omission on part of the carrier. The word "negligence" implies a duty as well as its breach, and the fact can never be found in the absence of a duty. Assuming then that the plaintiff went upon the train to render necessary assistance to a female passenger and child, and that those in charge of the train knew that he was upon it, was it the duty of defendant to hold the train the full length of time that was usually required for passengers to get off and on the cars at that place ? The court charged the jury that it was, and this presents the controlling question upon this appeal.

We frequently find the statement of a rule that trains must be stopped a reasonable time for all passengers who desire to stop at the station to get off and outgoing passengers to get on and, when applied in a proper case, the rule is no doubt sound. But the rule is designed for the benefit of passen-

S C—28

gers only who desire to end or begin their journey, and cannot be invoked as a ground for recovery by other persons.

If one, intending to transact important business with a passenger, should be disappointed by reason of an unusually short stop, he could not invoke the rule, although a stop for the usual time would have benefited him greatly ; nor could the passenger complain for the failure to stop, unless it was the station of his destination. And even as to passengers, the rule does not require a stop for any usual, stated time, but only for a reasonable time to permit those who desire to stop to get off and outgoing passengers to get on. It is obvious that this time would vary, and that a stop which would be reasonable at one time when there were but few desiring to get on or off would be unreasonable at another when there were many; but it is the duty of passengers, when the train stops, to proceed with reasonable expedition to get off or on, as they desire, and if sufficient time for this purpose be given, the rule stated requires no longer stop, and the train may resume its progress. We do not think this rule can be invoked to sustain the plaintiff's claim. But one who goes upon the train to render necessary assistance to a passenger in conformity to a practice approved or acquiesced in by the carrier, in its interest and upon its implied invitation as before stated, has a right to render the needed assistance and leave the car, and the railroad in permitting him to enter it with knowledge of his purpose is presumed to agree that he may execute it, and is bound to hold the train a reasonable time therefor. *Griswold* v. *Chicago, etc. R. Co.,* 26 N. W., *supra.*

But the duty is dependent upon the knowledge of his purpose by those in charge of the train ; for, without such knowledge, they may reasonably conclude that he entered to become a passenger, and cause the train to be moved after allowing him a reasonable time to get aboard. The law could not, in reason or justice, impose as a duty the doing of that which, in the light of everything known to the trainmen, would not appear necessary or proper, nor hold that the

cars should be stopped when there was no reason to stop them except a fact unknown to them. If the attendant intended to become a passenger, he had no reason to ask a continued stop ; and if he desired to get off, and that alone made a longer stop necessary, he could not expect or ask that it be made where no occasion for it was known to those in charge. Even where a passenger desires to stop at an intermediate station, he must make his desire known; and if he neglect this, he cannot complain if he is carried past his station. *Griswold* v. *Chicago R. Co.*, 26 N. W., *supra ; Coleman* v. *Ga. R. Co.*, *supra.* If such notice is required of passengers, it should, with at least equal reason, be exacted of others, and we are of opinion that it is essential to fix a duty in that regard.

The court charged the jury that if the employees upon the cars offered to assist the woman and child to a seat and to care for their hand-baggage, the plaintiff had no right to enter the car, and the defendant owed him no duty except to refrain from wilful or wanton injury to him. This was proper; for if the defendant's employees offered to perform that service, there was no necessity for an escort, and the act of plaintiff in going on the cars was not done upon any implied invitation of the defendant.

2. When escort may not enter coach.

The notice that all persons not having business with the company were positively forbidden to enter any of the defendant's cars would not apply to a person who attended a passenger to render needed assistance ; if it does, it might be seriously questioned whether it would not be unreasonable and void where the company failed to furnish necessary attendants to render such assistance. Proof of the notice was immaterial, and proof of the custom on part of the railroad employes was likewise immaterial but harmless.*

3. Effect of notice to trespassers not to enter coach.

---

*The notice referred to in the opinion is as follows :

" SPECIAL NOTICE.—All persons not having business with the company are hereby positively forbidden to enter, sit, stand or walk upon the railroad, side tracks, turn-tables, right of way, depots, platforms, or to get upon or ride on any of the locomotives or cars of the Missouri Pacific Railway, leased and operated lines.

"And all such persons, whether children or adults, are hereby notified that

Tested by the rule above announced, the court properly refused the second, fourth, sixth and seventh instructions asked by the defendant, and committed no error in modifying the fifth, eighth, and ninth ; the appellee concedes that the third announced the law but contends that it was covered by other parts of the charge; we have therefore treated it as correct and the court will see upon a re-trial that the charge given covers it.

The instructions for plaintiff all embody the principle that it was the duty of the defendant to stop the train the usual length of time for permitting passengers to alight and embark, regardless of defendant's knowledge that plaintiff wished to get off, and that the omission thereof might be the basis of a recovery ; whereas, we hold that there was no duty to hold the train without such knowledge, and that, if the duty existed, it was to hold the train long enough to permit plaintiff to go on, assist the woman to a seat and then get off.

For the errors in charging the jury the judgment will be reversed, and the cause remanded. As the evidence upon another trial may differ materially from that disclosed by the record, we have not determined whether it would justify a finding for the plaintiff; but lest our silence be misconstrued, we deem it proper to state that the judges have

---

they have no legal right to do such things, and that in every such case they are trespassers.

"All persons are hereby positively forbidden to enter or go in or upon any of the said places, or in or upon any of the property of this company to transact their own private business of any and all kinds, and all such persons who disobey this order will be trespassers, and the laws applicable will be enforced against them. This applies particularly to hackmen, hotel runners, etc.

"The attention of parents whose children go about said places, or upon any of the property of this company, to play or to ride on the trains, or for any other purpose, is especially called to this order, and they are hereby required to keep their children away from the railroad, as in all such cases the children are not only greatly exposed to dangers, but are in law trespassers."

It was proved that plaintiff had knowledge of the notice. He was permitted to prove that the regulation was usually disregarded by the employees in charge of defendant's trains.—[REP.

suggested doubts upon their part whether the plaintiffs' own testimony did not establish such imprudence and recklessness upon his part in attempting to leave the train after it was in motion as would preclude a recovery, even if the defendant is shown to have been guilty of negligence.